**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PETROS DEVELOPMENT GROUP LLC**
4223 Brecksville Road
Richfield, Ohio 44286,

and

**NEWELL INVESTORS LLC**
4223 Brecksville Road
Richfield, Ohio 44286,

and

**HOMESTEAD INVESTORS LLC**
4223 Brecksville Road
Richfield, Ohio 44286,

Plaintiffs,

and

**STATE OF OHIO, *ex rel.* PETROS DEVELOPMENT GROUP**
4223 Brecksville Road
Richfield, Ohio 44286,

and

**STATE OF OHIO, *ex rel.* NEWELL INVESTORS LLC**
4223 Brecksville Road
Richfield, Ohio 44286,

and

**STATE OF OHIO, *ex rel.* HOMESTEAD INVESTORS LLC**
4223 Brecksville Road

CASE NO.

**COMPLAINT FOR DECLARATORY JUDGMENT, MONETARY, INJUNCTIVE, AND OTHER RELIEF, AND VERIFIED PETITION FOR WRIT OF MANDAMUS**

**JURY DEMAND ENDORSED HEREON**

Richfield, Ohio 44286,

Relators,

-v-

**VILLAGE OF KIRTLAND HILLS, OHIO**
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**VILLAGE OF KIRTLAND HILLS, OHIO PLANNING AND ZONING COMMISSION**
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**VILLAGE OF KIRTLAND HILLS, OHIO BOARD OF ZONING APPEALS**
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**BARRY HENDRICKS**, in an official capacity as Zoning Inspector,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**ALYSON SCOTT**, in an official capacity as Mayor,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**JENNIFER BURK**, in an official capacity as Planning Commission member,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and )

**STEVE ALLEN**, in an official capacity as Planning Commission member,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**CORY HINTON**, in an official capacity as Planning Commission member,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**JOHN CONNOR**, in an official capacity as Planning Commission member,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**RYAN SMITH**, in an official capacity as Planning Commission member,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060,

and

**JANE / JOHN DOES #1-5**, in their official capacities as Board of Zoning Appeals members,
8026 Chillicothe Road
Kirtland Hills, Ohio 44060

Defendants / Respondents.

With a Copy To:

**ANDY WILSON**
**ATTORNEY GENERAL OF OHIO**
30 East Broad Street, 14th Floor
Columbus, Ohio 43215



7575544.6

Now come Plaintiffs/Relators Petros Development Group LLC ("Petros"), and Newell Investors LLC ("Newell") and Homestead Investors LLC ("Homestead") (Newell and Homestead collectively, "Owners") (Petros and Owners, collectively, "Plaintiffs"), by and through counsel, and for their Complaint against Defendants/Respondents Village of Kirtland Hills, Ohio ("Village"), Village of Kirtland Hills, Ohio Planning and Zoning Commission ("PZC"), Village of Kirtland Hills, Ohio Board of Zoning Appeals ("BZA"), Barry Hendricks in an official capacity as Zoning Inspector, Alyson Scott in an official capacity as Mayor, Jennifer Burk in an official capacity as PZC member, Steve Allen in an official capacity as PZC member, Cory Hinton in an official capacity as PZC member, John Connor in an official capacity as PZC member, and Jane/John Does #1-5 in their official capacities as BZA members (all Defendants/Respondents collectively, "Defendants"), hereby allege and state as follows:

## INTRODUCTION AND NATURE OF ACTION

1. This civil-rights and land-use action arises from Defendants' arbitrary application of the Village of Kirtland Hills zoning code to an isolated, landlocked parcel owned by Owners and Defendants' refusal to provide the mandatory administrative process for review of that application.

2. This action also arises from the Village's arbitrary residential large lot zoning applied to two additional isolated and landlocked parcels abutting a highway – one of which is owned by Homestead and the other owned by Owners.

3. Finally, this action also arises from the Village's arbitrary large lot residential zoning applied to three additional properties owned by Owners that have sat idle for almost two years despite being marketed under the current large lot residential zoning and which are adjacent to similar properties with smaller lots, located on a right-of-way that has utility access, and is across from commercial uses.

4. Owners own a 2.24-acre parcel in the Village identified as Lake County, Ohio Permanent Parcel Number ("PPN") 22-A-006-0-00-019-0 (the "Isolated Property 1"). It is adjacent to the Interstate 90 exit ramp and has no road frontage or legal access through the Village or otherwise.

5. Owners also own a .2973-acre parcel in the Village identified as PPN 22-A-006-0-00-016-0 (the "Isolated Property 2"). It is adjacent to Interstate 90 and has no road frontage or legal access through the Village or otherwise.

6. Homestead owns a 1.4470-acre parcel in the Village identified PPN 22-A-006-0-00-022-0 (the "Isolated Property 3"). It is adjacent to the Interstate 90 exit ramp and has no road frontage or legal access through the Village or otherwise.

7. Owners also own three separate yet contiguous parcels – being a 5.6261-acre parcel identified as PPN 22-A-005-0-00-021-0, a 5.2063-acre parcel identified as PPN 22-A-005-0-00-022-0, and a 5.2669-acre parcel identified as PPN 22-A-005-0-00-018-0 (collectively, "Large Lot Parcels"). They are located southwest of the intersection of busy Johnnycake Ridge Road and Little Mountain Road in the Village. Higher density residential development exists immediately to the north of the Large Lot Parcels, utilities are available to the Large Lot Parcels, they are across from the Village's only commercial use district (ironically owned by the Village), and they are across from commercial uses to the north on the other side of Johnnycake Ridge Road and on the other side of Little Mountain Road.

8. Isolated Property 1, Isolated Property 2, Isolated Property 3, and the Large Lot Parcels are all zoned Farm and Residence District under Chapter 1145 of the Village Codified Ordinances ("Farm and Residence Zoning Restrictions"). Isolated Property 1, Isolated Property 2, and Isolated Property 3 are smaller than the five-acre minimum lot area required by Village Codified Ordinance § 1145.02 and, because of their configuration, location, access constraints, interstate influence, and surrounding uses, cannot support an economically viable conventional residential use under the current zoning.

9. The Large Lot Parcels comply with the five-acre minimum lot area required by Village Codified Ordinance § 1145.02 but because of their location adjacent to busy Johnnycake Road, higher density residential uses, the Village's only commercially zoned district, and commercial uses, cannot support an economically viable conventional residential use under the current zoning.



7575544.6

10. Owners propose to use the Isolated Property 1 as an access and traffic-circulation drive aisle, with related parking, serving an authorized retail development on adjoining land in the City of Mentor, Ohio ("Mentor").

11. After Petros applied for a certificate of compliance on May 20, 2026 concerning Isolated Property 1, Village officials diverted the application to the newly formed PZC, although Village Codified Ordinance § 1173.02 assigns certificate-of-compliance authority to the Zoning Inspector and does not authorize the PZC to decide such applications.

12. The PZC denied the application for Isolated Property 1 on July 22, 2026 but did not issue a written decision despite Petros' request that they do so. Petros then filed a variance application and notice of appeal with the Zoning Inspector and BZA on August 20, 2026.

13. Village Codified Ordinance § 1161.04 provides that, "[u]pon receipt of a notice of appeal, the Board shall schedule a public hearing thereon . . ." Despite repeated demands, Village officials have not scheduled the required hearing and have stated only that no meeting has been set.

14. Owners and Homestead do not have a current use for Isolated Property 2 and Isolated Property 3 but the Farm and Residence Zoning Restrictions applied prohibits the use of those properties and they cannot make any economically viable use of the properties unless zoned to allow commercial uses in conjunction with the Mentor development.

15. Owners have attempted to market the Large Lot Parcels under the Farm and Residence Zoning Restrictions to no avail, and the application of the large lot zoning requirements under the Farm and Residence Zoning Restrictions renders the use of the Large Lot Parcels economically unviable.

16. Concerning Isolated Property 1: Owners and Petros seek damages and just compensation for the deprivation and taking of their property rights; temporary-taking and delay damages; declaratory and injunctive relief; a writ of mandamus compelling the BZA to schedule and conduct the required public hearing; attorneys' fees and recoverable expert fees and costs; and all other relief the Court deems just.

17. Concerning Isolated Property 2 and Isolated Property 3, Owners and Homestead seek damages and just compensation for the deprivation and taking of their property rights; temporary-taking and delay damages; declaratory and injunctive relief; attorneys' fees and recoverable expert fees and costs; and all other relief the Court deems just.

18. Concerning the Large Lot Parcels, Owners seek damages and just compensation for the deprivation and taking of their property rights; temporary-taking and delay damages; declaratory and injunctive relief; attorneys' fees and recoverable expert fees and costs; and all other relief the Court deems just.

## JURISDICTION AND VENUE

19. This Court has original federal-question jurisdiction under 28 U.S.C. § 1331 because this Complaint asserts claims under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction also lies under 28 U.S.C. § 1343(a)(3) and (a)(4) because Plaintiffs seek redress under an Act of Congress providing for the protection of civil rights and for damages or equitable relief under a federal statute for the deprivation, under color of state law, of rights secured by the Constitution.

20. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law claims because those claims arise from the same nucleus of operative fact as the federal claims and form part of the same case or controversy. Declaratory relief is authorized under 28 U.S.C. §§ 2201–2202 and, as to the state-law declaratory-judgment claim, Ohio Revised Code Chapter 2721.

21. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in Lake County, Ohio, which lies within the Eastern Division of the Northern District of Ohio. Pursuant to Local Civil Rule 3.1, this action is properly assigned to the Eastern Division because the claims arose in Lake County.

22. This Court has personal jurisdiction over each Defendant because each is domiciled in Ohio, maintains offices within this District, and the acts and omissions giving rise to this action occurred in Ohio.

**PARTIES**

23. Plaintiff Petros is an Ohio entity with its principal place of business at 4223 Brecksville Road, Richfield, Ohio 44286. Petros is the applicant and developer for the proposed use of the Isolated Property 1 and the adjoining Mentor development.

24. Plaintiff Newell Investors LLC is an Ohio limited liability company with its principal place of business at 4223 Brecksville Road, Richfield, Ohio 44286 and an owner of Isolated Property 1, Isolated Property 3, and the Large Lot Parcels.

25. Plaintiff Homestead Investors LLC is an Ohio limited liability company with its principal place of business at 4223 Brecksville Road, Richfield, Ohio 44286 and an owner of Isolated Property 1, Isolated Property 2, Isolated Property 3, and the Large Lot Parcels.

26. Defendant Village of Kirtland Hills, Ohio is a municipal corporation organized under Ohio law, with offices at 8026 Chillicothe Road, Kirtland Hills, Ohio 44060.

27. Defendant Mayor Alyson Scott is the Mayor of the Village and is sued in her official capacity only. On information and belief, Mayor Scott participated in the July 22, 2026 PZC meeting and moved to deny Petros's request.

28. Defendant Chief Barry Hendricks is the Village Chief of Police and Zoning Inspector and is sued in his official capacity only. Under Village Codified Ordinance § 1173.02, the Zoning Inspector is responsible for issuing certificates of compliance in conformity with the zoning ordinance.

29. Defendant Village of Kirtland Hills Planning and Zoning Commission is a Village administrative body. Defendants Jennifer Burk, Steve Allen, Cory Hinton, John Connor, and Ryan Smith are PZC members and are sued in their official capacities only.

30. Defendant BZA is a Village administrative body. Defendants John/Jane Does 1–5 are the presently unidentified members of the BZA and are sued in their official capacities only. Plaintiffs will substitute their names after confirmation through disclosure or judicial notice.

31. At all relevant times, the individual Defendants acted under color of state law. The official-capacity claims are claims against the Village and are pleaded to obtain appropriate prospective and other relief.

32. The challenged conduct constitutes official municipal action because it was taken or ratified by Village officials and bodies responsible for final or controlling decisions concerning the application, appeal, hearing process, and enforcement of the Village's zoning ordinances. Alternatively, it reflects a municipal custom or practice of withholding the required process from Plaintiffs.

## FACTUAL ALLEGATIONS

### The Isolated Property 1 and Proposed Use

33. The Isolated Property 1 is currently undeveloped and contains approximately 2.24 acres.

34. Owners own the Isolated Property 1. Petros is the developer and applicant seeking governmental approval for the proposed use of the Isolated Property 1.

35. The Isolated Property 1 is separated from the remainder of the Village by Interstate 90, bordered by the City of Mentor on two sides and Interstate 90 on another side, and influenced directly by the interstate and interchange.

36. The Isolated Property 1 is landlocked, has no Village-street frontage, has no street address, and has no legal access through the Village. Its available access is through adjoining land in Mentor.

37. The Isolated Property 1 is small and irregularly configured. It does not satisfy the five-acre minimum lot-area requirement under the Farm and Residence Zoning Restrictions.

38. The Isolated Property 1's physical and locational characteristics make conventional residential development impracticable and economically nonviable.

39. The Isolated Property 1 is in the Village's Farm and Residence District. Village Codified Ordinance § 1133.01 states the zoning scheme's purpose includes maintaining and enhancing the Village's semi-rural residential character.

40. Village Codified Ordinance § 1145.01 permits single-family dwellings; certain public facilities, schools, roadside stands, churches, and nonprofit arboretums as conditional uses; farms and nurseries; accessory buildings and uses; and specified signs.

41. The Village has taken the position that the proposed drive aisle and related parking are not principal permitted uses in § 1145.01.

42. Owners and Petros propose to use the Isolated Property 1 as an access and traffic-circulation drive aisle, with related parking and supporting site functions, for a larger retail development located on adjoining parcels within Mentor.

43. The proposed use is compatible with the Isolated Property 1's actual setting next to an interstate interchange and an authorized commercial development, while conventional residential use is not.

**Certificate-of-Compliance Application and PZC Action**

44. On May 20, 2026, Petros and Owners, through counsel, submitted an Application for Certificate of Compliance to Zoning Inspector Hendricks for Isolated Property 1 and the proposed access, circulation, and parking use.

45. Village Codified Ordinance § 1173.02 provides that no change in the use of land may occur without a zoning certificate of compliance and that "[n]o certificate shall be issued by the Zoning Inspector except in conformity with the provisions of this Zoning Ordinance."

46. Section 1173.02 assigns the certificate determination to the Zoning Inspector. The Village ordinances do not grant the PZC authority to grant or deny a certificate-of-compliance application.

47. After May 20, Petros and Owners sent multiple follow-up communications requesting action. Village representatives advised Petros and Owners that the PZC would have to review the application.

48. According to communications and records available to Plaintiffs, the Village had to formulate the PZC because an operating PZC did not previously exist. The Village thus routed Petros' and Owners' application through a newly constituted body under an ad hoc process not contemplated by the zoning code.

49. On June 16, 2026, Petros and Owners sent a follow-up letter to the then-identified Village Law Director, Stephen Byron, requesting action on the application.

50. On June 18, 2026, the Law Director advised that the Village would schedule a PZC meeting and then a BZA meeting.

51. The PZC convened on July 22, 2026. Burk, Allen, Connor, Mayor Scott, and Zoning Inspector Hendricks attended in person. Village Law Director James O'Leary, Hinton, and Smith participated by Microsoft Teams.

52. The meeting record states: "Due to the violation of the Village Zoning Code, Mayor Scott motioned, and the motion was seconded by Mr. Connor to deny the applicant's request and recommended the variance request to the Board of Zoning Appeals."

53. The meeting record also reflects that Burk accepted a motion to deny the application for the certificate of compliance.

54. Immediately after the PZC meeting on July 22, 2026, legal counsel for Plaintiffs asked Zoning Inspector Hendricks when a BZA meeting would be held. Inspector Hendricks said he would be checking the BZA's availability, schedule the meeting, and send notice of the same.

55. The PZC purported to deny Petros' and Owners' application even though it had no authority under § 1173.02 to decide that application.

56. Defendants did not issue a written decision stating findings, reasons, appeal rights, or an effective date, although meeting minutes were later produced in response to Petros' public records request.

57. The absence of a written decision created uncertainty as to what decision existed, who made it, when it became final, and how Petros and Owners could obtain review.

**Appeal and Variance Application**

58. Despite the fact that Petros and Owners were informed by Inspector Hendricks that a BZA hearing was going to be automatically scheduled after the July 22, 2026 PZC meeting and repeated follow up requests for such meeting, on August 20, 2026, Petros and Owners filed with the Zoning Inspector and BZA a formal application for a use variance, notice of appeal, and demand under Village Codified Ordinance § 1161.01.

59. The August 20 filing sought a variance from § 1145.01, to the extent required, to permit the access and traffic-circulation drive with related parking.

60. The filing expressly demanded that the Village promptly schedule a BZA hearing. It also demanded an immediate written PCZ decision if the Village believed no appealable decision yet existed.

61. Village Codified Ordinance § 1161.04 imposes a mandatory duty on the BZA: "Upon receipt of a notice of appeal, the Board shall schedule a public hearing thereon."

62. The BZA nevertheless failed and refused to timely schedule the hearing mandated by § 1161.04.

**Public-Records Request and Continued Refusal to Schedule**

63. On August 21, 2026, Petros and Owners submitted a public-records request to Village Clerk-Treasurer Jamie Zigman under Ohio Revised Code § 149.43, seeking records concerning the application, the PZC's formation and July 22 meeting, the BZA application, and comparable variance proceedings.

64. On August 27, 2026, Petros and Owners sent a preservation letter and again pursued the required hearing and related records.

65. On August 31, 2026, Petros and Owners followed up with Zoning Inspector Hendricks about scheduling.

66. On September 1, 2026, Hendricks telephoned counsel and stated that he was "polling" members. He would not commit to a hearing date and said only that he would let counsel know.

67. On September 10, 2026, Petros and Owners sent another email requesting the scheduling status.

68. On September 11, 2026, Petros and Owners sent another email requesting the status of the public-records request.

69. On September 15, 2026, Petros and Owners received a response to the public-records request.

70. On September 18, 2026, Petros and Owners again followed up regarding the unscheduled BZA proceeding.

71. Through at least September 21, 2026—more than four months after Petros and Owners submitted the Certificate for Compliance, two months after the PZC denied the Certificate for Compliance, and more than one month after the appeal and variance application was submitted—Defendants had not scheduled a hearing and responded only that "no meeting has been set."

72. Defendants' inaction is not a routine processing delay. It prevents Petros and Owners from presenting evidence, obtaining findings, securing a final local determination, pursuing a statutory administrative appeal, or using the Isolated Property 1 as proposed.

**Differential Processing of Other Applicants**

73. Village public records show that other variance applicants received ordinary processing and hearings.

74. Defendants intentionally treated Petros and Owners differently at the processing stage by refusing to convene the BZA, and no rational administrative reason has been stated for that difference.

**Injury and Municipal Responsibility**

75. The Owners have been deprived of the use, development, and economically productive enjoyment of the Isolated Property 1. Petros has been deprived of a lawful decision-making process on its application and has suffered development delay and related losses.

76. The delay has caused and continues to cause carrying costs, professional expenses, loss of use, disruption to site planning and development sequencing, financing and opportunity costs, diminution in value, and other damages in amounts to be proved. Additionally, Isolated Property 1 is proposed to be a part of a larger retail development that includes adjacent land in Mentor, and the Village's continuing delay and refusal to follow a proper process is interfering with such development to an extent that the development is in jeopardy of not proceeding, which would result in damages in excess of $10,000,000.00.

77. The Village, its final policymakers, and its authorized administrative bodies made, ratified, enforced, or maintained the challenged decisions and omissions. These were not isolated acts of an unauthorized employee.

78. Petros and Owners have no adequate avenue to cure the process because Defendants have withheld both a written certificate decision and the mandatory BZA hearing needed to generate an administrative record and final local determination.

**Isolated Property 2 and Isolated Property 3**

79. Isolated Property 2 and Isolated Property 3 are bordered by Interstate 90 to the south, bordered by the City of Mentor to the north, and influenced directly by the interstate and interchange.

80. Isolated Property 2 and Isolated Property 3 are landlocked, have no Village-street frontage, and have no legal access through the Village or otherwise.

81. Isolated Property 2 and Isolated Property 3 are small and irregularly configured. They do not satisfy the five-acre minimum lot-area requirement in Village Codified Ordinance § 1145.02.

82. Isolated Property 2 and Isolated Property 3's physical and locational characteristics make conventional residential development impracticable and economically nonviable.

83. Isolated Property 2 and Isolated Property 3 are in the Village's Farm and Residence District. Village Codified Ordinance § 1133.01 states the zoning scheme's purpose includes maintaining and enhancing the Village's semi-rural residential character.

84. Village Codified Ordinance § 1145.01 permits single-family dwellings; certain public facilities, schools, roadside stands, churches, and nonprofit arboretums as conditional uses; farms and nurseries; accessory buildings and uses; and specified signs.

85. The application of Village Codified Ordinance § 1145.01 to Isolated Property 2 and Isolated Property 3 is arbitrary and capricious and fails to substantially advance a legitimate governmental purpose.

86. The only economically viable uses of Isolated Property 2 and Isolated Property 3 is for commercial use in conjunction with the commercial development in Mentor.

87. Given the Village's actions and/or inactions with Isolated Property 1 as set forth herein, attempting to exhaust any Village procedure at this point would be unduly burdensome and futile.

**Large Lot Parcels**

88. The Large Lot Parcels are adjacent to busy Johnnycake Road, higher density residential development and commercial uses in Mentor directly to the north, have full access to utilities, adjacent to the Village's only commercially zoned district, and are adjacent to a commercial use to the east, all of which influence the use and viability of the Large Lot Parcels.

89. The Large Lot Parcel's physical and locational characteristics make the large lot residential development impracticable and economically nonviable.

90. The Large Lot Parcels are in the Village's Farm and Residence District. Village Codified Ordinance § 1133.01 states the zoning scheme's purpose is not only to maintain and enhance the Village's semi-rural residential character but also to prevent "resulting dangers from lack of sewer and water facilities . . ."

91. The application of Village Codified Ordinance § 1145.01 to the Large Lot Parcels is arbitrary and capricious and fails to substantially advance a legitimate governmental purpose.

92. The only economically viable uses of the Large Lot Parcels is for higher density residential development or commercial use in conjunction with their location.

93. Given the Village's actions and/or inactions with Isolated Property 1 as set forth herein, attempting to exhaust any Village procedure at this point would be unduly burdensome and futile.

## EXHAUSTION OF REMEDIES, FINALITY, AND FUTILITY

94. Concerning Isolated Property 1, Owners and Petros have pursued every reasonably available Village procedure: they filed a certificate application, repeatedly sought action, appeared through the PZC process directed by the Village that does not exist, filed a variance application and notice of appeal with the required fee, demanded a written decision, and repeatedly demanded a BZA hearing.

95. Section 1161.04 makes scheduling the hearing a mandatory Village duty, but Defendants are affirmatively preventing that process from occurring.

96. No further administrative step can be meaningfully pursued until Defendants convene the BZA and issue a reviewable determination. Requiring Plaintiffs to wait indefinitely would allow Defendants to defeat judicial review by withholding the very procedure required to produce finality.

97. Further resort to Village procedures is futile because the Village has declined to perform its mandatory scheduling duty despite repeated written and oral requests and has not identified any additional submission needed from Plaintiffs.

98. The procedural due-process injury is the infirmity and denial of the process itself and is cognizable without awaiting a final merits decision.

99. Defendants' refusal to provide a written decision or convene the BZA makes further pursuit unavailable and futile.

100. Plaintiffs plead their constitutional and takings theories in the alternative as permitted by Federal Rule of Civil Procedure 8(d).

## COUNT I
## SUBSTANTIVE DUE PROCESS – ISOLATED PROPERTY 1
### 42 U.S.C. § 1983; Fourteenth Amendment

101. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

102. The Owners possess protected property interests in the ownership, use, development, and economically beneficial enjoyment of Isolated Property 1. Petros possesses protectable interests arising from its complete application and its entitlement to nonarbitrary administration of the Village's mandatory land-use procedures.

103. Acting under color of state law, Defendants deprived Owners and Petros of those interests in Isolated Property 1 through arbitrary and capricious conduct, including assigning decision-making power to a body not authorized by the ordinances, purporting to deny the application without a written decision, refusing to convene the BZA despite a mandatory ordinance, and by applying the Farm and Residence Zoning Restrictions.

104. As applied to this uniquely situated Isolated Property 1, strict enforcement of Farm and Residence Zoning Restrictions bears no rational relationship to the stated purpose of maintaining and enhancing the Village's semi-rural residential character. The parcel is physically separated from that residential setting, lacks Village access, fails the minimum lot requirement, and adjoins an interstate interchange and authorized commercial development.

105. The combination of irrational as-applied restrictions and deliberate procedural obstruction is so arbitrary as to lack a rational basis and to violate substantive due process.

106. The challenged conduct represents official policy, action, ratification, or custom attributable to the Village and proximately caused Plaintiffs' injuries.

107. Owners and Petros are entitled to damages and appropriate declaratory and injunctive relief under 42 U.S.C. § 1983.

**COUNT II**
**SUBSTANTIVE DUE PROCESS – ISOLATED PROPERTY 2, ISOLATED PROPERTY 3, AND LARGE LOT PARCELS**
**42 U.S.C. § 1983; Fourteenth Amendment**

108. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

109. The Owners and Homestead possess protected property interests in the ownership, use, development, and economically beneficial enjoyment of Isolated Property 2, Isolated Property 3, and the Large Lot Parcels.

110. Acting under color of state law, Defendants deprived Owners and Homestead of those interests through arbitrary and capricious conduct, including zoning them under the Village's Farm and Residence Zoning Restrictions.

111. As applied to Isolated Property 2, Isolated Property 3, and the Large Lot Parcels, strict enforcement of Farm and Residence District restrictions bears no rational relationship to the stated purpose of maintaining and enhancing the Village's semi-rural residential character and preventing dangers from lack of sewer and water facilities. The properties are physically separated from that residential setting. Isolated Property 2 and Isolated Property 3 lacks Village access, fail the minimum lot requirement, and they adjoin an interstate interchange. The Large Lot Parcels have full access to water and sewer.

112. The combination of irrational as-applied restrictions is so arbitrary as to lack a rational basis and to violate substantive due process.

113. The challenged conduct represents official policy, action, ratification, or custom attributable to the Village and proximately caused Owners' and Homestead's injuries.

114. Owners and Homestead are entitled to damages and appropriate declaratory and injunctive relief under 42 U.S.C. § 1983.

## COUNT III
## PROCEDURAL DUE PROCESS – ISOLATED PROPERTY 1
**42 U.S.C. § 1983; Fourteenth Amendment**

115. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

116. Owners and Petros possess protected property interests in the Isolated Property 1 and in the use and development rights associated with it, as well as a legitimate claim of entitlement to the nondiscretionary hearing process prescribed by § 1161.04.

117. Defendants deprived Owners and Petros of those interests by using an unauthorized decision-maker, failing to issue a written decision, and denying the mandatory BZA hearing and meaningful opportunity to present evidence and be heard.

118. The state and municipal procedures afforded in form were not applied or were misapplied. The Village itself has prevented use of the local hearing and the record necessary for further review.

119. Because the constitutional injury is the denial and infirmity of the process, the claim is presently cognizable.

120. The deprivation occurred pursuant to official Village action, policy, ratification, or custom and caused Owners' and Petros' damages.

121. Owners and Petros are entitled to damages and declaratory and injunctive relief, including an order requiring a prompt BZA hearing with lawful notice, an opportunity to present evidence, an impartial decision-maker, and a written decision supported by findings.

**COUNT IV**
**REGULATORY TAKING — PER SE TAKING UNDER *LUCAS* – ISOLATED PROPERTY 1**
**Fifth and Fourteenth Amendments; 42 U.S.C. § 1983**

122. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

123. The Fifth Amendment's Takings Clause applies to the Village through the Fourteenth Amendment and prohibits the taking of private property for public use without just compensation.

124. A regulation that deprives an owner of all economically beneficial use of property effects a categorical taking. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 1029 (1992).

125. As applied and enforced by Defendants, the Farm and Residence Zoning Restrictions foreclose every economically beneficial lawful use of the Isolated Property 1: it cannot satisfy the five-acre minimum for residential use, lacks access and market demand for a conventional homesite, and cannot lawfully be used for the circulation, access, parking, buffering, or assemblage functions that supply its identifiable market utility.

126. Owners are entitled to just compensation, damages, interest, and other appropriate relief for the period and extent of the taking.

**COUNT V**
**REGULATORY TAKING — *PENN CENTRAL* BALANCING TEST – ISOLATED PROPERTY 1**
**Fifth and Fourteenth Amendments; 42 U.S.C. § 1983**

127. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

128. If Defendants' conduct does not constitute a categorical taking, it constitutes a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).

129. The economic impact is severe because the zoning and its enforcement eliminate conventional residential marketability and prevent the assemblage and supporting-site uses to which the Isolated Property 1's practical utility and value are tied.

130. The challenged conduct substantially interferes with reasonable, distinct investment-backed expectations associated with integrating the Isolated Property 1 into the authorized adjoining Mentor development. Those expectations are supported by the parcel's location, access realities, surrounding uses, and the retail development on the Mentor property.

131. The character of the governmental action favors Owners because Defendants have imposed a site-specific burden to preserve a residential character the Isolated Property 1 cannot serve, while compounding that burden through unauthorized procedure, lack of findings, unequal processing, and indefinite delay.

132. On balance, the challenged regulation and its administration impose a burden that, in fairness and justice, should be borne by the public rather than by Owners alone.

133. Owners are entitled to just compensation, damages, interest, and appropriate declaratory relief.

**COUNT VI**
**TEMPORARY TAKING AND DELAY DAMAGES – ISOLATED PROPERTY 1**
**Fifth and Fourteenth Amendments; 42 U.S.C. § 1983**

134. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

135. From no later than the Village's purported denial and refusal to provide the required review, Defendants have temporarily deprived Owners of the use and enjoyment of the Isolated Property 1 and have delayed the integrated development.

136. A temporary regulatory taking requires compensation even if the restriction is later withdrawn, invalidated, or cured. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987).

137. Defendants' indefinite refusal to schedule the BZA hearing prolongs the taking and prevents Plaintiffs from obtaining a lawful determination that could end or define the period of deprivation.

138. As a direct and proximate result, Owners have incurred and will continue to incur loss-of-use damages, fair rental or market-value loss during the taking period, carrying and financing costs, interest, professional expenses, development-delay losses, and other consequential damages recoverable under applicable law and proved at trial.

139. Owners are entitled to just compensation and damages for the temporary period of taking and unconstitutional delay, together with prejudgment and post-judgment interest.

## COUNT VII
## REGULATORY TAKING — PER SE TAKING UNDER *LUCAS* – ISOLATED PROPERTY 2, ISOLATED PROPERTY 3, AND LARGE LOT PARCELS
**Fifth and Fourteenth Amendments; 42 U.S.C. § 1983**

140. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

141. The Fifth Amendment's Takings Clause applies to the Village through the Fourteenth Amendment and prohibits the taking of private property for public use without just compensation.

142. A regulation that deprives an owner of all economically beneficial use of property effects a categorical taking. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 1029 (1992).

143. As applied and enforced by Defendants, the Farm and Residence Zoning Restrictions foreclose every economically beneficial lawful use of Isolated Property 2 and Isolated Property 3: they cannot satisfy the five-acre minimum for residential use, lack access and market demand for a conventional homesite, and cannot lawfully be used for the circulation, access, parking, buffering, or assemblage functions that supply their identifiable market utility.

144. As applied and enforced by Defendants, the Farm and Residence Zoning Restrictions foreclose every economically beneficial lawful use of the Large Lot Parcels: they are located in an area that forecloses large lot residential development due to their location abutting a busy road, access to utilities, and near higher density residential development, and commercial uses.

145. Owners and Homestead are entitled to just compensation, damages, interest, and other appropriate relief for the period and extent of the taking.

**COUNT VIII**
**REGULATORY TAKING — *PENN CENTRAL* BALANCING TEST – ISOLATED PROPERTY 2, ISOLATED PROPERTY 3, AND LARGE LOT PARCELS**
**Fifth and Fourteenth Amendments; 42 U.S.C. § 1983**

146. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

147. If Defendants' conduct does not constitute a categorical taking, it constitutes a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).

148. The economic impact is severe because the zoning and its enforcement eliminate conventional residential marketability and prevent the assemblage and supporting-site uses to which the Isolated Property 1 and Isolated Property 2's practical utility and value are tied.

149. The challenged conduct substantially interferes with reasonable, distinct investment-backed expectations associated with integrating the Isolated Property 2 and Isolated Property 3 into the authorized adjoining Mentor development. Those expectations are supported by the parcel's location, access realities, surrounding uses, and the retail development on the Mentor property.

150. The character of the governmental action favors Owners and Homestead because Defendants have imposed a site-specific burden to preserve a residential character Isolated Property 2 and Isolated Property 3 cannot serve.

151. The economic impact is severe because the zoning and its enforcement eliminate conventional residential marketability and prevent the economically viable use to which the Large Lot Parcels' practical utility and value are tied.

152. The economic impact is severe because the zoning and its enforcement eliminate conventional residential marketability and prevent the uses to which the Large Lot Parcels' practical utility and value are tied.

153. The challenged conduct substantially interferes with reasonable, distinct investment-backed expectations associated with the Large Lot Parcels. Those expectations are supported by the Large Lot Parcels' location, access and utility realities, and surrounding uses.

154. The character of the governmental action favors Owners because Defendants have imposed a site-specific burden to preserve a residential character the Large Lot Parcels cannot serve.

155. On balance, the challenged regulation and its administration impose a burden that, in fairness and justice, should be borne by the public rather than by Owners and Homestead alone.

156. Owners and Homestead are entitled to just compensation, damages, interest, and appropriate declaratory relief.

**COUNT IX**
**TEMPORARY TAKING AND DELAY DAMAGES – ISOLATED PROPERTY 1**
**Fifth and Fourteenth Amendments; 42 U.S.C. § 1983**

157. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

158. From no later than the Village's purported denial and refusal to provide the required review, Defendants have temporarily deprived Owners of the use and enjoyment of the Isolated Property 1 and have delayed the integrated development.

159. A temporary regulatory taking requires compensation even if the restriction is later withdrawn, invalidated, or cured. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987).

160. Defendants' indefinite refusal to schedule the BZA hearing prolongs the taking and prevents Owners from obtaining a lawful determination that could end or define the period of deprivation.

161. As a direct and proximate result, Owners have incurred and will continue to incur loss-of-use damages, fair rental or market-value loss during the taking period, carrying and financing costs, interest, professional expenses, development-delay losses, and other consequential damages recoverable under applicable law and proved at trial.

162. Owners are entitled to just compensation and damages for the temporary period of taking and unconstitutional delay, together with prejudgment and post-judgment interest.

## COUNT X
## EQUAL PROTECTION — CLASS OF ONE – ISOLATED PROPERTY 1
**Fourteenth Amendment; 42 U.S.C. § 1983**

163. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

164. The Equal Protection Clause protects a person from being intentionally treated differently from others similarly situated without a rational basis for the difference.

165. Other land use applicants were similarly situated to Owners and Petros with respect to the Village's nondiscretionary processing function: each submitted a zoning request requiring referral, scheduling, or consideration through Village boards.

166. Defendants intentionally singled out Owners and Petros by delaying, obstructing, and refusing to schedule their BZA hearing while processing other applicants through the ordinary channels.

167. No rational basis has been stated for refusing to perform the mandatory scheduling duty in Owners' and Petros' case.

168. The differential treatment resulted from official Village action, policy, ratification, or custom and caused Owners and Petros damages.

169. Owners and Petros are entitled to damages and appropriate declaratory and injunctive relief under 42 U.S.C. § 1983.

**COUNT XI**
**MANDAMUS – ISOLATED PROPERTY 1**
**Ohio Revised Code Chapter 2731; 28 U.S.C. § 1367**

170. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

171. Petros filed a notice of appeal and variance application sufficient to invoke the BZA's duty under Village Codified Ordinance § 1161.04.

172. Section 1161.04 states that, upon receipt of a notice of appeal, the BZA "shall schedule a public hearing thereon." This language creates a clear, present, and ministerial legal duty.

173. Petros and Owners have a clear legal right to have the BZA schedule and conduct that hearing.

174. The BZA and its official-capacity members have failed and refused to perform their clear legal duty despite repeated demands.

175. Petros and Owners lack an adequate remedy in the ordinary course of law because the refusal to convene the BZA prevents a decision and administrative record from which an ordinary administrative appeal could proceed. Damages alone cannot supply the mandated hearing.

176. Petros and Owners request a writ directing the BZA and its members to schedule and conduct a public hearing promptly and to proceed to a written decision in accordance with applicable law.

**COUNT XII**
**OHIO CONSTITUTIONAL CLAIMS**
**Ohio Constitution Article I, §§ 1, 2, 16, and 19**

177. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

178. Article I, § 1 of the Ohio Constitution protects, among other rights, possessing and protecting property and seeking and obtaining happiness and safety.

179. Article I, § 2 of the Ohio Constitution guarantees that government and laws are instituted for the equal protection of the people.

180. Article I, § 16 guarantees a remedy by due course of law and that justice shall be administered without denial or delay.

181. Article I, § 19 provides that private property shall be held inviolate, subject to the public welfare, and requires compensation when private property is taken.

182. Defendants' arbitrary enforcement and application of zoning, denial of mandatory process, unreasonable delay, and taking or damaging of property without compensation violate these provisions, as applicable.

183. Plaintiffs seek all relief available for those violations, including declaratory and injunctive relief, mandamus, and just compensation.

**COUNT XIII**
**DECLARATORY JUDGMENT**
**28 U.S.C. §§ 2201–2202; Ohio Revised Code Chapter 2721**

184. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

185. An actual, present, and justiciable controversy exists concerning the authority of the PZC, the duties of the Zoning Inspector and BZA, the validity and effect of the purported July 22 denial, the lawfulness of Defendants' delay, and the constitutionality of applying the Village's Farm and Residence Zoning Restrictions to Isolated Property 1, Isolated Property 2, Isolated Property 3, and the Large Lot Parcels.

186. Plaintiffs contend that § 1173.02 places certificate-of-compliance authority with the Zoning Inspector; the PZC lacked authority to decide the application; § 1161.04 requires the BZA to schedule a hearing; and Defendants' contrary conduct violates federal and Ohio law.

187. Defendants' conduct demonstrates a contrary position and has concrete, continuing effects on Plaintiffs.

188. A declaration will clarify the parties' rights and legal relations and will guide necessary prospective relief.

189. Plaintiffs request declarations that the PZC's purported denial was unauthorized and without legal effect; that the BZA has a mandatory duty to schedule and conduct the hearing; that Defendants' refusal and delay are unlawful; and that the challenged zoning and enforcement actions, as applied to Isolated Property 1, Isolated Property 2, Isolated Property 3, and the Large Lot Parcels, violate the constitutional provisions identified above to the extent proved.

## COUNT XIV
## MANDAMUS – INVERSE CONDEMNATION
### Ohio Revised Code Chapter 2731

190. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten here.

191. Under Article I, Section 19 of the Ohio Constitution and the Fifth Amendment to the United States Constitution, Owners and Homestead have a clear right to receive compensation from the Defendants for the taking of Isolated Property 1, Isolated Property 2, Isolated Property 3, and the Large Lot Parcels by continuing to enforce the burdensome Farm and Residence District Restrictions.

192. Defendants have deprived the Owners and Homestead of all or most economically viable use of the aforesaid properties, to be determined at trial, by unconstitutionally applying the Farm and Residence District Restrictions in a manner that constitutes a taking.

193. Defendants are under a clear legal duty to commence appropriation proceedings in the Lake County Court of Common Pleas so that the court can determine the amount of compensation the Defendants must pay for taking the aforesaid properties.

194. Owners and Homestead have no plain and adequate remedy in the ordinary course of law to require the Defendants to compensate them fairly for the losses that they have incurred and will continue to incur for the Defendants aforesaid taking of the properties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award the following relief:

a. Declare the parties' rights and obligations as requested;

b. Declare that the PZC lacked authority under the Village Codified Ordinances to decide the certificate-of-compliance application and that its purported denial is unauthorized and without legal effect;

c. Declare that the zoning applied to Isolated Property 1, Isolated Property 2, Isolated Property 3, and the Large Lot Parcels are invalid and unconstitutional;

d. Issue preliminary and permanent injunctive relief compelling Defendants to cease obstructing the administrative process and requiring the BZA promptly to schedule and conduct a lawful public hearing concerning Isolated Property 1;

e. Issue a writ of mandamus directing the BZA and its members to perform their mandatory duties under § 1161.04 concerning Isolated Property 1;

f. Award compensatory damages in an amount to be determined at trial;

g. Award just compensation for any categorical, *Penn Central*, and temporary taking proved, including recoverable loss-of-use and delay damages, carrying and financing costs, interest, consequential damages, and diminution in value;

h. Issue a writ of mandamus directing the Defendants to appropriate the subject properties and pay Owners and Homestead just compensation in an amount that a jury determines at trial;

i. Award prejudgment and post-judgment interest as allowed by law;

j. Award Plaintiffs their reasonable attorneys' fees under 42 U.S.C. § 1988(b);

k. Award expert fees to the extent recoverable under 42 U.S.C. § 1988(c) or other applicable law, together with taxable costs and other litigation expenses;

l. Retain jurisdiction to enforce the Court's declaratory, injunctive, and mandamus relief; and

m. Award all other legal and equitable relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38 and the Seventh Amendment.

Respectfully submitted,

/s/ *Anthony R. Vacanti*
John P. Slagter (0055513)
Anthony R. Vacanti (0080834)
Danielle M. Easton (0099591)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Phone: 216-592-5000
Fax: 216-592-5009
Email: John.Slagter@tuckerellis.com
Tony.Vacanti@tuckerellis.com
Danielle.Easton@tuckerellis.com

*Attorneys for Plaintiffs/Relators*

**STATE OF OHIO** )
) ss: **VERIFICATION**
**COUNTY OF** Summit )

I, Sam Petros, being first duly sworn, depose and state as follows:

1. I am an authorized representative of Petros Development Group LLC, Newell Investors LLC, Homestead Investors LLC, and Bolton Properties Limited.

2. I am familiar with the facts referred to in this Verified Complaint.

3. I have read the allegations and facts contained in this Verified Complaint, and that said facts and allegations are true to the best of my knowledge and belief.

**FURTHER AFFIANT SAYETH NAUGHT.**

By:____________________

Printed Name: SAM PETROS

Title: Authorized Representative

Date: 9/23/2026

SWORN TO AND SUBSCRIBED in my presence on this 23rd day of September, 2026.

____________________
NOTARY PUBLIC

My Commission Expires: ________

CARLA M. SANTORA
Notary Public, State of Ohio
Recorded In Cuyahoga County
My Commission Expires
December 2, 2027

NOTARY PUBLIC
STATE OF OHIO